**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**JILLIAN L. BROWN,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 2:24-cv-563**

**THE SCHOOL BOARD OF THE CITY OF NORFOLK, VIRGINIA,**

**KRISTEN NICHOLS,**

**CYNTHIA BADGER,**

**SUSAN STUART DAVIS-FOXWORTH,**

**TIERRA LANIER,**

**D. JEAN JONES,**

**D. TIMOTHY BILLUPS,**

**CRYSTAL SATCHELL,**

**and**

**SHARON I. BYRDSONG,**

**Defendants.**

***MEMORANDUM OPINION AND ORDER***

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). ECF Nos. 29, 30 ("Mot. Dismiss," "Def.'s Mem."). On November 24, 2025, Plaintiff filed a Second Amended Complaint *pro se*. ECF No. 28 ("Am. Compl."). On December 8, 2025, Defendants filed both their Motion to Dismiss and Memorandum in Support. ECF Nos. 29, 30. On January 6, 2026, Plaintiff filed a Memorandum in Opposition to Defendants' Memorandum in Support of their Motion to Dismiss. ECF No. 32

("Resp. Opp."). On January 8, 2028, Defendants filed a Motion to Strike Plaintiff's Memorandum in Opposition and a Memorandum in Support, due to untimeliness. ECF Nos. 33, 34.

On January 12, 2026, Defendants filed a Reply Memorandum in Support of their Motion to Dismiss. ECF No. 35 ("Def.'s Reply"). On January 22, 2026, Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Strike. ECF No. 36. On January 27, 2026, Defendants filed a Reply Memorandum in Support of their Motion to Strike. ECF No. 37. On that same date, Defendants filed a Request for Oral Argument. ECF No. 38. Plaintiff then filed a Combined Response in Opposition to Defendants' Request for Oral Argument and their Motion to Strike. ECF No. 39. [1] The Court has considered the parties' memoranda, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing on the Motion to Dismiss is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 8, 2025, Jillian L. Brown ("Plaintiff") filed a Second Amended Complaint alleging (1) race-based hostile work environment and harassment; (2) race-based discrimination; (3) retaliation in violation of Title VII of the Civil Rights Act of 1964; (4) retaliation in violation of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act ("ADA"); (5) retaliation in violation of the First Amendment; and (6) retaliation in violation of the Civil Rights Act of 1871 (under two theories). Am. Compl. ¶¶ 146-181. Stated in the light most favorable to Plaintiff, the following alleged facts are drawn from the Second Amended Complaint and attachments thereto.

[1] Given her *pro se* status, the Court will grant Plaintiff deference and accept her Memorandum in Opposition, though it was untimely by one week.

Plaintiff, a Black female, was employed as a special education teacher by the School Board of the city of Norfolk (Norfolk School Board). Am. Compl. ¶ 16. Defendants are the Norfolk School Board, Norfolk Public Schools ("NPS"), Principal Dr. Kristen Nichols, teachers Cynthia Badger, Susan Stuart David-Foxworth, and Tierra Lanier, Executive Director Dr. D. Jean Jones, Chief Human Resources Officer D. Timothy Billups, Human Resources Generalist Crystal Satchell, and Superintendent Dr. Sharon I. Byrdsong ("Defendants"). *Id.* ¶¶ 3-12. Plaintiff alleges that she suffered adverse employment action due to unlawful discrimination, and that she was treated differently than similarly situated employees who were not in her protected class. *Id.* ¶ 40. Defendants filed a Motion to Dismiss for Failure to State a Claim. *See generally* Mot. Dismiss; Def.'s Mem.

In 2021, Plaintiff was hired as a special education teacher at Crossroads School for 2021-2022 school year. *Id.* ¶ 16. In September 2021, a white fifth-grade teacher, Rebecca Logsdon, knowingly made false claims to other teachers that Plaintiff failed to provide services to one of Mrs. Logsdon's students. *Id.* ¶ 27. The next month, another white fifth-grade teacher, Cynthia Badger, began falsely claiming that Plaintiff was not providing mandated services to a student and otherwise failed manage Ms. Badgers students. *Id.* ¶ 27. However, Ms. Badger knew these statements were false and that Plaintiff had no responsibility for Ms. Badger's students. *Id.* ¶ 28. Ms. Badger later falsely told two fifth grade teachers that Plaintiff cursed at a student. *Id.* ¶ 30. Plaintiff reported the incident to a superior. *Id.* ¶ 31. The principal, Dr. Nichols, ignored Ms. Badger's pattern of disseminating false statements about Plaintiff's performance. *Id.* ¶ 32.

Plaintiff also notified administrators that (1) two fifth-grade teachers refused to provide Individualized Education Program (IEP) accommodations to their students; and (2) teachers allowed students to look at test answers and then change their answers. *Id.* ¶¶ 33-34. Thereafter,

the two teachers limited Plaintiff's access to her student caseload.[2] *Id.* ¶ 35. After Plaintiff complained to administration, the teachers removed any non-IEP student from Plaintiff's small-group instruction. *Id.* ¶ 36. Still, Plaintiff passed her performance evaluations and received a retention bonus from the Virginia Department of Education. *Id.* ¶ 37. She also received a contract renewal for the 2022-2023 school year.[3] *Id.* ¶ 38.

Throughout the 2021-2022 school year, Ms. Badger publicly accused Plaintiff of failing to address students' behavior, despite them not being assigned to Plaintiff. *Id.* ¶ 41. Plaintiff reported this to Dr. Nichols, who took no corrective action. *Id.* In contrast, a white special-education teacher in Ms. Badger's classroom was not required to address behavioral issues or criticized for failing to do so. *Id.* ¶ 42. Ms. Badger knowingly made more false statements about Plaintiff's job performance from October 2021 through the end of the 2021-2022 school year. *Id.* ¶ 43.

Plaintiff alleges that in the 2022-2023 school year, Ms. Badger's conduct escalated. *Id.* ¶ 44. Dr. Nichols began requiring Plaintiff to keep a separate tally sheet for each of her students' IEP goals, which Plaintiff believes is retaliatory. *Id.* ¶ 47. A non-Black special education chair, Sarah Gurel, did not perform the same tracking requirements. *Id.* ¶¶ 45, 48-49.

In 2022, Plaintiff notified NPS and the Norfolk School Board that she was subject to unlawful discrimination.[4] *Id.* ¶ 53. Neither NPS, the Norfolk School Board, nor Dr. Nichols investigated this conduct. *Id.* ¶¶ 53, 55. Instead, NPS and the Norfolk School Board ignored Plaintiff's complaints and labeled them as "building level concerns." *Id.* ¶¶ 53, 66.

---

[2] Plaintiff does not clarify what "limiting access to her caseload" means. The Court determines, based on the rest of the Second Amended Complaint, that Plaintiff means the teachers did not let her interact with her assigned students. *See, e.g.*, Am. Compl. ¶ 60 (stating that "Ms. Badger lacked authority to restrict Plaintiff's access to her assigned students").

[3] Plaintiff's contract was renewed and she received a retention bonus after the alleged complaints to administration.

[4] In her Second Amended Complaint, Plaintiff does not specify on what basis she told NPS she was discriminated against. *See* Am. Compl. ¶ 53.

Ms. Badger spread false accusations about Plaintiff's performance to Mrs. Davis-Foxworth, whose daughter was on Plaintiff's caseload. *Id.* ¶ 58. The statements were circulated by staff members, including Tierra Lanier. *Id.* Ms. Badger also falsely told students that Plaintiff made negative comments about them. *Id.* ¶ 62.

Plaintiff also believes she faced retaliation for attempting to protect educational rights of the learning-disabled students. *Id.* ¶ 68. Plaintiff reported that her students with learning disabilities were denied a Free Appropriate Public Education (FAPE)[5] and faced "improper conduct" from Ms. Badger. *Id.* ¶ 69. Dr. Nichols had assigned Plaintiff to work with Ms. Badger, who had full classroom authority and restricted Plaintiff's caseload access. *Id.* ¶ 71. In addition to denying Plaintiff access to her caseload, Plaintiff alleges NPS and the Norfolk School board denied students a FAPE by failing to provide students "resources, accommodations, and support necessary for students with learning disabilities." *Id.* ¶ 72. Additionally, Ms. Badger failed to comply with students' IEPs. *Id.* ¶ 74.

Ms. Badger limited students' interaction with Plaintiff to a few minutes, relocated classes without notifying Plaintiff of the new location, and penalized students for interacting with Plaintiff. *Id.* ¶ 92. On September 29, Plaintiff complained to Assistant Principal, Ms. Morris, that Ms. Badger treated Black and white students differently. *Id.* ¶ 102.

To address these claims, Ms. Morris scheduled a meeting, which included Dr. Nichols, Ms. Ryan, and Mrs. Gurel. *Id.* ¶ 103. After the meeting, Mrs. Gurel required Plaintiff to supervise recess and transition periods. *Id.* ¶ 104. Plaintiff alleges that this task conflicted with the

---

[5] *See* 20 U.S.C. § 1401(9).

Individuals with Disabilities Education Act (IDEA). *Id.* ¶ 104.[6] Plaintiff believes this new requirement was a form of punishment for raising her concerns at the meeting. *Id.* Ms. Gurel further assigned Plaintiff the responsibility of arranging coverage for Ms. Badger and Ms. Jones to attend IEP meetings. *Id.* ¶ 105. Plaintiff complained to the Human Resources Generalist about the new requirement. *Id.* ¶ 106.

Ms. Badger told students that Dr. Nichols intended to fire Plaintiff. *Id.* ¶ 107. On October 24, Plaintiff requested a transfer via email. *Id.* ¶ 108. Dr. Nichols responded by scheduling Plaintiff for a formal observation set for October 31. *Id.* ¶ 109. Dr. Nichols attended Plaintiff's student's IEP meeting, at which Ms. Badger said Plaintiff was not permitted to work with any of her students without permission. *Id.* ¶ 112. None of the present administrators corrected the statement. *Id.* Dr. Nichols placed Plaintiff on a Performance Improvement Plan ("PIP"), citing the meeting as a catalyst. *Id.* ¶¶ 114, 126. Prior to the meeting, Plaintiff had not received a warning. *Id.* ¶ 126.

Dr. Nichols required Plaintiff to submit lesson plans on Thursday, while other teachers were allowed to submit their lesson plans by Sunday night. *Id.* ¶ 119. These lesson plans were intended to modify Ms. Jones and Ms. Badger's plans, making them practically impossible to complete on Thursdays. *Id.* Plaintiff was reprimanded and threatened with termination because of consequentially inaccurate lesson plans. *Id.* ¶ 120. Dr. Nichols emailed Plaintiff a Letter of Concern on December 5, that was backdated to November 9. This letter was a necessary step according to a Memorandum of Understanding for progressive discipline steps. *Id.* ¶ 115.

On December 9, Ms. Badger allegedly sent students to the Main Office to make false reports about Plaintiff. *Id.* ¶ 128. Plaintiff subsequently requested an investigation, which was

[6] Section 300.117 of the IDEA regulations states that "each public agency must ensure that each child with a disability participates with nondisabled children in the extracurricular services and activities to the maximum extent appropriate to the needs of that child. *See* 34 C.F.R. § 300.117; 20 U.S.C. § 1412(a)(5)(A).

assigned to Dr. Nichols. *Id.* ¶¶ 130-131. On January 22, Plaintiff reported concerns regarding Ms. Badger inflating assessment scores, to which the Norfolk School Board took no corrective action. *Id.* ¶¶ 134-135. On February 10, Plaintiff received a formal Plan of Action, which is the final step before termination. *Id.* ¶ 140. Meanwhile, Ms. Badger continued to prevent students from participating in Plaintiff's small group. *Id.* ¶ 142. Plaintiff was eventually terminated and her contract was not renewed for the 2023-2024 school year. *Id.* ¶ 56.

Plaintiff asserts the following against Defendant:

1. Race-Based Hostile Work Environment and Harassment in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.* (*Id.* ¶ 146);
2. Race-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq*. (*Id.* ¶ 151);
3. Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.* (*Id.* ¶ 158);
4. Retaliation in Violation of § 504 of the Rehabilitation Act of 1973, as amended, Public Law 117–286, 29 U.S.C. § 701 *et seq.* and Title II of the Americans with Disabilities Act ("ADA"), as amended, Public Law 101-336, 42 U.S.C. § 12132 *et seq.* (*Id.* ¶ 163);
5. Retaliation in Violation of the First Amendment. U.S. CONST. amend. I. (*Id.* ¶ 171);
6. Retaliation in Violation of the Civil Rights Act of 1871, as amended, Public Law 96-170, 42 U.S.C. § 1983 (*Id.*);
7. Retaliation in Violation of the Civil Rights Act of 1871, as amended, Public Law 96-170, 42 U.S.C. § 1983 (*Id.* ¶ 181).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Note that courts liberally construe complaints filed *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "'[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106).

## III. DISCUSSION

Under Rule 12(b)(6), Defendants the School Board of the City of Norfolk, Virginia, Kristen Nichols, Cynthia Badger, Susan Stuart Davis-Foxworth, D. Jean Jones, and Sharon I. Byrdsong[7] move to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. ECF Nos. 29-30.

### A. Counts 1, 2 and 3—Failure to Exhaust Administrative Remedies

Plaintiff did not attach an EEOC complaint to her Second Amended Complaint, nor mention one in the body of the Complaint. *See generally* Am. Compl. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss states that "Plaintiff timely filed her complaint with the EEOC and subsequently filed suit in federal court." ECF No. 32 at 29. However, Plaintiff again did not offer proof of such complaint.

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. "An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000(e)–5(e)(1)). "A charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* (citing 29 C.F.R.

[7] Timothy Billups and Crystal Satchell were not NPS employees at the time of attempted service, and they were not personally served. ECF No. 9 at 3. The summons for Tierra Lanier was unexecuted as she was no longer employed with NPS and had moved to New Jersey. ECF No. 3.

§ 1601.12(b)). Next, the EEOC investigates and notifies the employer of the alleged unlawful discrimination. 42 U.S.C. § 2000(e)–5(b). "If the [EEOC] determines after such investigation that there is reasonable cause to believe that the charge is true, the [EEOC] shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* However, if the EEOC determines not to file a civil action, then the individual may file a civil action against their employer. 42 U.S.C. § 2000(e)–5(f)(1).

The First, Second, and Third Causes of Action allege that Defendants violated Title VII. Am. Compl. ¶¶ 146-162. Plaintiff has not provided evidence that she has exhausted administrative remedies with the EEOC. Though she states in a memorandum that she filed a complaint with the agency, the Court finds this evidence insufficient. In the absence of any evidence that Plaintiff exhausted administrative remedies, the Court must dismiss Counts 1, 2, and 3 without prejudice.

**B. Count 4—Statute of Limitations**

The Fourth Cause of Action in Plaintiff's Second Amended Complaint includes ADA and Rehabilitation Act Claims. Am. Compl. ¶ 163. Plaintiff claims that Defendants violated these statutes by retaliating against her for engaging in protected activity—namely, opposing unlawful discrimination under both Acts. *Id.* ¶ 164. Defendants have raised the statute of limitations bar in their Motion to Dismiss. Def.'s Mem. at 18-19.

"Because Title II of the ADA does not contain a statute of limitations, courts must either apply the deferral four-year catch-all limitations period or the state statute of limitations for the most analogous state-law claim." *Latson v. Clarke*, 346 F. Supp. 3d 831, 857 (W.D. Va. 2018) (citing *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011)). However, "[t]he four-year catch-all period applies only to claims arising under statutes enacted after December 1, 1990." *Id.* The Supreme Court reiterated this rule in 2004. "[A] cause of action 'aris[es] under an

Act of Congress enacted after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

The ADA was enacted months before this cutoff, on July 26, 1990. *See* Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 327. Therefore, the Court must apply the state statute of limitations for the most analogous state law claim. *See* 42 U.S.C. § 1988; *A Soc'y Without a Name v. Virginia*, 655 F.3d at 347. The Commonwealth of Virginia has a one-year statute of limitations period for claims under the Virginia Rights of Persons with Disabilities Act. VA. CODE ANN. § 51.5–40 *et seq.* Courts have found the Virginia Rights of Persons with Disabilities Act to be the most analogous to both the ADA and § 504 of the Rehabilitation Act of 1973. *See, e.g., Eastman v. Virginia Polytechnic Inst. & State Univ.*, 732 F. Supp. 665, 666 (W.D. Va. 1990) (stating, "[t]he most analogous state statute to the Rehabilitation Act of 1973 is Va. Code §§ 51.5–40 *et seq.* (1988 Repl.Vol.)"); *A Soc'y Without a Name v. Virginia*, 655 F.3d at 347-348 (stating that "the Virginia Disabilities Act provides the limitations period for claims brought under the Federal Rehabilitation Act in Virginia" and that "the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia").

The Court finds that because the alleged retaliatory adverse employment action—contract nonrenewal—occurred in June 2023, and the complaint was filed in September 2024, the Fourth Cause of Action is time-barred. Therefore, Defendant's Motion to Dismiss Count 4 is granted.

### C. Count 5—First Amendment Retaliation

Plaintiff's Fifth Cause of Action is retaliation in violation of the First Amendment under 42 U.S.C. § 1983. Am. Compl. ¶ 171. Defendants argue that Plaintiff fails to plead this Count because she did not speak as a private citizen on a matter of public concern. Def.'s Mem. at 28.

The Civil Rights Act was incorporated into the United States Code as 42 U.S.C. § 1983. 42 U.S.C. § 1983 governs civil actions for deprivation of rights. *See* 42 U.S.C. § 1983. The statute states that:

> Every person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

*Id.*

"First Amendment retaliation is actionable because 'retaliatory actions may tend to chill individuals' exercise of constitutional rights.'" *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (quoting *ACLU of Md., Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993)). However, "not all retaliatory conduct tends to chill First Amendment activity. . . ." *Id.* (citing *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995)). Therefore, a cause of action for First Amendment retaliation must allege conduct that chills First Amendment activity. *See id.* Moreover, a plaintiff must allege a causal connection between her First Amendment activity and the alleged adverse action. *Id.* at 501.

To state a First Amendment claim for retaliatory discharge, Plaintiff must allege (1) she spoke as a citizen upon a matter of public concern rather than as an employee about a matter of personal interest; (2) her interest in speaking upon the matter of public concern outweighed the Government's interest in providing effective and efficient services to the public; and (3) her speech was a substantial factor in the employer's termination decision. *See McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998). Ultimately, "a teacher's exercise of [her] right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 574 (1968).

First, the Court must determine whether Plaintiff spoke as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "If the answer is no, the employee has no First Amendment cause of action based on the employer's reaction to the speech." *Id.* This inquiry controls the Court's determination because an employer must have a "significant degree of control over its employees' words and actions" to "provide services efficiently." *Id.*

The issue is whether Plaintiff spoke as a citizen, rather than as an employee. Defendants argue that Plaintiff's complaints were made in her role as a special education teacher rather than a private citizen, and thus the First Amendment retaliation claim must fail. Def.'s Mem. at 27-28. "The First Amendment does not protect speech made pursuant to a government employee's official duties, even when that speech is upon a matter of public concern." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 584 (4th Cir. 2017) (citing *Garcetti*, 547 U.S. at 410, 421 (2006)). "Determining whether speech was made in the course of an employee's job requires courts 'to engage in a practical inquiry into the employee's daily professional activities.'" *Id.* (citing *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015)).

There are few cases in which courts use a detailed inquiry to determine whether a plaintiff's speech was within the scope of their employment duties. *Id.* However, Plaintiff plainly states that she acted within her "duties as a special education teacher" by making her complaints. Am. Compl. ¶ 82. The Court finds that Plaintiff acted as an employee, rather than as a "citizen," because (1) of her concession in the Second Amended Complaint, and (2) because of case law that made similar inquiries. In *Pickering*, for example, a teacher spoke to a local newspaper about school fund allocation, which was a matter of public concern. *Pickering*, 391 U.S. at 571-572. In contrast, Plaintiff in the instant case spoke internally about her student's education, which she believes was

required as a special education teacher. Therefore, Plaintiff has not met the first prong of a First Amendment retaliation claim. Defendants' Motion to Dismiss Count 5 is granted.

**D. Count 6—Retaliation in Violation of 42 U.S.C. § 1983**

Plaintiff alleges that Defendants retaliated against Plaintiff for her advocacy on behalf of disabled students, therefore violating the Civil Rights Act of 1871 and 42 U.S.C. § 1983. Am. Compl. ¶ 180. She also alleges a claim for violation of her constitutional rights. *Id.* ¶ 188. Defendants argue that these claims fail because Plaintiff has not (1) alleged she suffered an adverse employment action; (2) alleged actions taken pursuant to an official custom or practice; or (3) been deprived of a constitutional right. Def.'s Mem. at 25-26, 28.

**1. Retaliation**

Plaintiff states that the adverse employment action as a result of the advocacy was "loss of access to her students," "false performance reports," and "other negative employment actions." *Id.* ¶¶ 176, 179. Defendants argue that these are not adverse employment actions. Def.'s Mem. at 28.

A cause of action for retaliation under the Act and § 1983 requires that (1) Plaintiff engaged in protected activity; (2) the employer took adverse employment action against her; and (3) there is a causal connection between the protected activity engaged in and the subsequent action. *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 337 (4th Cir. 2011). Numerous cases assert that placing an employee on a PIP does not constitute an adverse employment action. For example, the court in *Pulley* determined that "Neither [a] poor evaluation rating, nor [a] placement on a PIP constitute adverse employment actions." *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 394 (D. Md. 2004). This is because "[a] performance review which has no effect on Plaintiff's compensation or promotion cannot be considered an adverse employment action." *Id.* Additionally, a PIP is designed to help employees continue employment. *Id.* *Pulley* was later affirmed by the Fourth

Circuit. *See Pulley v. KPMG Consulting, Inc.*, 183 F. App'x 387 (4th Cir. 2006). Further, after some of her complaints, Plaintiff's contract was renewed and she was granted a retention bonus. Am. Compl. ¶ 37.

Even if the Court reads Plaintiff's Second Amended Complaint to state that the adverse employment action was her eventual contract nonrenewal, there are not sufficient facts to create an inference of retaliation regarding her advocacy for disabled students. The § 1983 Retaliation claim is dismissed.

**2. Deprivation of Rights under the Fourteenth Amendment**

Plaintiff states that "Defendants' conduct violated Plaintiffs constitutional rights, actionable under 42 U.S.C. § 1983." Am. Compl. ¶ 188. She claims that Defendants deprived her of a property interest under the Fourteenth Amendment. *Id.* ¶ 23. Defendants respond that Plaintiff has not identified a constitutionally protected liberty or property right that was violated. Def.'s Mem. at 2.

As stated above, § 1983 provides relief for deprivations under color of State law of rights, privileges, and immunities and guaranteed by laws of the United States. *See* 42 U.S.C. § 1983. The Supreme Court has held that there is generally no constitutional requirement for a hearing before terminating a nontenured state teacher's contract absent a showing of a liberty or property interest in continued employment. *See The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573-578 (1972) (explaining that (1) a nonrenewal based on serious allegations of dishonesty or immorality *may* implicate a liberty interest; and (2) there is no property interest in a term teaching contract without a "good cause" provision). Later cases take a firmer stance. "[A] teacher has no personal right or property right under the United States Constitution to a limited, nontenured coaching contract, where state law provides none. *Burkey v. Marshall Cnty. Bd. of Ed.*, 513 F.

Supp. 1084, 1094-95 (N.D.W. Va. 1981); *Sigmon v. Poe*, 564 F.2d 1093, 1096 (4th Cir. 1977) (stating that a teaching contract "does not establish a property interest under the Fourteenth Amendment"); *see also Chitwood v. Feaster*, 468 F.2d 359, 360 (4th Cir. 1972) (asserting that untenured teachers had no right to an administrative hearing for failure to renew their contracts). Because Plaintiff has not (1) alleged that her contract nonrenewal was tethered to allegations that implicate a liberty interest; or (2) demonstrated a property interest in her limited teaching contract, the Court finds that she was not deprived of her rights under the Fourteenth Amendment.

**3. Defamation Plus**

Plaintiff also mentions a "defamation-plus" (also known as "stigma-plus") claim under § 1983. Am. Compl. ¶ 51. Plaintiff states that Defendants deprived her of liberty and property interests in her employment. Namely, she alleges that Ms. Badger undermined her professional reputation by falsely stating that Plaintiff "refused to do her job." Resp. Opp. at 36-37. Defendants argue that Plaintiff has not alleged a reputational injury that was accompanied by a state action that altered or extinguished her legal status. Def.'s Mem. at 2 n.2.

"[A] plaintiff bringing a 'stigma-plus' claim . . . must allege both a stigmatic statement and a 'state action that distinctly altered or extinguished' [her] legal status." *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) (citing *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 315 (4th Cir. 2012)). Because Plaintiff failed to state predicate § 1983 claims against the individual defendants, this Court must hold that Plaintiff failed to state "defamation-plus" claims. *See id.*

Additionally, to establish a violation of one's liberty interests, there must be open disparagement, such as a "public disclosure" of the reasons for the discharge. *Bishop v. Wood*, 426 U.S. 341, 348 (1976). Plaintiff has not alleged any statements concerning her "professional reputation" were made public, which is a requisite component of a "defamation-plus" claim. *See*

*Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 646 (4th Cir. 2007) (explaining that to state a liberty interest claim, a plaintiff must allege that the statements "(1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or demotion; and (4) were false") (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988)). Therefore, the "defamation-plus" component of Count 6 is dismissed.

**4. *Monell* Liability**

The Court last considers *Monell* Liability. Local school boards in Virginia are treated as municipalities for purposes of determining liability under *Monell*. *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 532 (4th Cir. 2022) (citing *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 522 n.3 (4th Cir. 2000)). Aside from stating that Defendants did not violate Plaintiff's constitutional rights, Defendants also contend that suits against a municipality for federal constitutional deprivation are only permitted when the municipality undertook the allegedly unconstitutional action pursuant to an "official policy" or "custom." Def.'s Mem. at 25.

"Under *Monell*, a municipality can be held liable for constitutional violations 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible [for] under § 1983.'" *O.W. v. Carr*, 172 F.4th 337, 356 (4th Cir. 2026) (citing *Hunter v. Town of Mocksville*, 897 F.3d 538, 554 (4th Cir. 2018)). However, in the absence of a constitutional violation, a plaintiff's attempt to hold a school board liable under *Monell* is a "nonstarter." *Id.* Because Plaintiff has failed to establish any constitutional violation, the Court cannot hold the Norfolk School Board liable under *Monell*.

For the individual defendants (rather than the Norfolk School Board), Defendants argue that Plaintiff must demonstrate that they *personally* acted in the deprivation of Plaintiff's rights. Def.'s Mem. at 26. However, the Court need not address these arguments, because Plaintiff was not deprived of any constitutional right, whether Fourteenth Amendment or First Amendment-related, as explained throughout Sections D of this opinion. Accordingly, Defendants' Motion to Dismiss Count 6 is granted.

**E. Count 7—Retaliation in Violation of the Civil Rights Act of 1871 and 42 U.S.C. § 1983**

Plaintiff alleges that Defendants took adverse actions against Plaintiff in retaliation for her reporting IDEA and ADA violations to school administrators. Am. Compl. ¶ 182-185. Defendants argue that Plaintiff "fails to identify a specific constitutional right, other than a violation of her general 'constitutional rights' that she claims was violated." Def.'s Mem. at 30. The Court finds that Plaintiff has not plausibly alleged that Defendants violated her constitutional rights. As stated in Section D(1) of this opinion, Plaintiff has not sufficiently alleged retaliation nor any cause of action under § 1983. Therefore, Defendants' Motion to Dismiss Count 7 is granted.

**IV. CONCLUSION**

Based on the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia

September 23 , 2026

/s/
Raymond A. Jackson
United States District Judge